IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| TYISHA T. BROWN , | ) | |
| | ) | |
| PLAINTIFF, | ) | C.A. No. 3:13-CV-1149-MBS-KDW |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| SAM'S EAST, INC., | ) | |
| | ) | |
| DEFENDANT. | ) | |
| | ) | |

Plaintiff Tyisha Brown ("Brown" or "Plaintiff"), filed this action against her employer, Sam's East, Inc. ("Sam's" or "Defendant"), alleging race and pregnancy employment discrimination pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.* Plaintiff's claims focus on her not being promoted or transferred to other positions and her allegedly disparate treatment. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on Defendant's Motion for Summary Judgment. ECF No. 38.  Having considered the Motion; Plaintiff's Response, ECF No. 42; Defendant's Reply, ECF No. 44; and applicable law, the undersigned recommends that Defendant's Motion for Summary Judgment be *granted* and this matter be ended.

I.    Standard of Review

A.  Motions for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477

U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249. "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995). A party cannot create a genuine issue of material fact solely with conclusions in his or her own affidavit or deposition that are not based on personal knowledge. *See Latif v. The Cmty. Coll. of Baltimore*, 354 F. App'x 828, 830 (4th Cir. 2009) (affirming district court's grant of summary judgment, noting plaintiff's affidavit, which offered conclusions not based on his own knowledge, did not create genuine issues of material fact). In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002) (Title VII). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. *Reeves v.*

*Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms. *See id.* at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

B.  Proof of Title VII Claims

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e–2(a)(1). Passed in 1978, the Pregnancy Discrimination Act ("PDA") amended Title VII's definitions subsection to include language addressing pregnancy. *Young v. United Parcel Serv. Inc.,* 135 S. Ct. 1338, 1344-45 (2015) (citing 42 U.S.C. § 2000e(k) ("The terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions . . .")).

A plaintiff may demonstrate a violation of Title VII through direct or circumstantial evidence. When direct evidence is lacking, a plaintiff may produce circumstantial evidence and proceed under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Plaintiff does not argue she has presented any direct evidence of discrimination, *see* Pl.'s Mem. 9, so the court considers her claims under the burden-shifting framework. Pursuant to this framework, once the plaintiff establishes a prima facie case of a violation of Title VII, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for its employment action. *Merritt v. Old Dominion Freight*, 601 F.3d

289, 294 (4th Cir. 2010). If the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason for its employment action, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the proffered reason was "not its true reason[ ], but [was] a pretext." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

A plaintiff alleging that she was treated less favorably in promotions because of a protected characteristic must establish a prima facie case by showing that: "(1) she is a member of a protected group, (2) she applied for the position in question, (3) she was qualified for that position, and (4) the defendants rejected her application under circumstances that give rise to an inference of unlawful discrimination." *Anderson v. Westinghouse Savannah River Co.,* 406 F.3d 248, 268 (4th Cir. 2005). After establishing her prima facie case, a plaintiff who alleges a failure to promote can "prove [the legitimate, nondiscriminatory reason proffered by the defendant was merely] pretext[ual] by showing that [s]he was better qualified, or by amassing circumstantial evidence that otherwise undermines the credibility of the employer's stated reasons." *Heiko v. Colombo Sav. Bank,* 434 F.3d 249, 259 (4th Cir. 2006). In evaluating relative qualifications, the court's analysis must be "based on the criteria that the employer has established as relevant to the position in question." *Id.* The Fourth Circuit has held that when comparing the relative qualifications of two candidates, the plaintiff must make "a strong showing that [her] qualifications are demonstrably superior to the qualifications of the successful employee." *Id.* at 261-62. Further, when "a plaintiff asserts job qualifications that are similar or only slightly superior to those of the person eventually selected, the promotion decision remains vested in the sound business judgment of the employer." *Id.* at 261.

To make out a prima facie case of disparate treatment, a plaintiff must show that (1) she is a member of a protected class; (2) she was qualified for the job and her performance satisfied her employer's expectations; (3) she suffered an adverse employment action; and (4) similarly

situated employees outside her protected class received more favorable treatment. *See Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). To show disparate treatment on the basis of pregnancy, Plaintiff must show that Defendant discharged or otherwise discriminated against Plaintiff "because of" her "pregnancy, childbirth, or related medical conditions." 42 U.S.C. §§ 2000e(k); 2000e–2(a)(1). "Liability in a disparate-treatment case depends on whether the protected trait actually motivated the employer's decision." *Young v. United Parcel Serv.,* 135 S. Ct. 1338, 1345 (2015) (quoting *Raytheon Co. v. Hernandez,* 540 U.S. 44, 52 (2003)).

While intermediate evidentiary burdens shift back and forth, the ultimate burden of persuasion that the defendant engaged in intentional discrimination remains at all times with the plaintiff. *See Reeves,* 530 U.S. at 146-47 ("The ultimate question is whether the employer intentionally discriminated, and proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct.'") (quoting *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506 (1993)).

II.     Analysis[1]

Plaintiff began working for Sam's in Columbia, South Carolina in October 2005 as a seasonal worker. Pl.'s Dep. 10, ECF No. 38-4 and ECF No. 43-1.[2] In March 2006, she was

---

[1] Unlike those in most employment actions, the facts relevant to Plaintiff's claims do not readily lend themselves to a chronological narrative. Therefore, the undersigned sets out pertinent facts when discussing Plaintiff's claims and Defendant's Motion. In considering this Motion, the court considers all facts in the light most favorable to Plaintiff. According to Defendant's Motion, Plaintiff did not conduct written discovery in this matter, and the discovery period ended in July 2014. As an apparent result, Plaintiff's factual recitation consists of her deposition testimony. Plaintiff's testimony is competent evidence as to events for which she has personal knowledge. However, much of her testimony is speculative in nature, making it inadmissible in considering summary judgment. A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis*, 53 F.3d at 62.

[2] ECF No. 38-4 contains pages of Plaintiff's deposition relied on by Defendant in its Motion. ECF No. 43-1 contains the full transcript of Plaintiff's deposition as provided by Plaintiff in her response.

rehired as a part-time cashier; she was later promoted to a full-time cashier position, a position Plaintiff has held during all times relevant to this litigation. *Id.* at 10-11, 14, 21-22.[3]

As detailed in Plaintiff's response to Defendant's Motion, *see* Pl.'s Mem. 2-4, ECF No. 42, Plaintiff bases her pregnancy-discrimination claims on two incidents: her failure to be placed in a full-time position in Sam's tire department that became open in February 2012; and a February 2012 incident involving lifting bags of flour for which Plaintiff received a verbal warning. As articulated in her brief and discussed in detail below, the factual bases for Plaintiff's race-discrimination claim include various actions or non-actions by George Turosik ("Turosik"), who was the General Manager at the Columbia Sam's from August 2011 until he was transferred to another Sam's Club. *See* Pl.'s Mem. 2-3. To the extent possible, the court considers Plaintiff's claims as identified by her in her responsive memorandum.

A. Pregnancy-Discrimination Claims

   1) Failure to Promote to February 2012 Tire Mounting Area ("TMA") Position

      a. Background

Defendant's employees inform Defendant of their current and future interests in job positions and transfers through a computerized Career Preferences program. Declaration of Sam's Assistant Manager Krystal Smith-Brown ("Smith-Brown Decl.") ¶ 1, ECF No. 38-5. Because Plaintiff had indicated a Career Preference to work in the TMA, when an opening for a Tire Technician became available in February 2012, the computerized Career Preferences system identified Plaintiff as a potential candidate for the opening. Pl.'s Dep. 35, 70-72; Smith-Brown Decl. ¶ 4.[4] Smith-Brown asked Plaintiff to interview for the position. *Id.* The Tire Technician duties included dismounting, mounting, and balancing tires sold by Sam's. *Id.* Plaintiff had no

---

[3] As of the filing of Defendant's Motion, Plaintiff remained in that position. Def.'s Mem. 3.
[4] Smith-Brown's Declaration indicates the Tire Technician position was part-time, Smith-Brown Decl. ¶ 4; however, that seems to be a scrivener's error.

experience with automobile or tire maintenance. Pl.'s Dep. 69. She informed Smith-Brown that she was unaware the position required lifting and that she had actually intended to apply for a TMA Sales Associate position.[5] Pl.'s Dep. 37, 70-72; Smith-Brown Decl. ¶ 5. However, in deposition, Plaintiff indicated the difference in the TMA Technician and Cashier positions did not matter to her. She testified, "I wasn't aware that we had to change tires, but I mean, if I had to, it wouldn't have been a problem. I mean, we had help back there. I'm pretty sure somebody could have helped me, you know, change the tire. And I mean, we have the transferring policy, so what difference is it me lifting stuff on the front end to me lifting a tire?" Pl.'s Dep. 35.[6]

Plaintiff's and Smith-Brown's versions of what else was said regarding the position differ. Plaintiff indicates Smith-Brown approached her "smiling like it was a joke and she was like, 'you apply for the tire department?' She's like, 'you know you can't do that while you're pregnant.'" Pl.'s Dep. 35. Smith-Brown states that, when she asked Plaintiff to interview for the TMA Technician position, *Plaintiff* "laughed, saying that she could not perform the position's duties because she was herself pregnant." Smith-Brown Decl. ¶ 4. Smith-Brown denies having told Plaintiff she would be unable to perform the duties because of her pregnancy. "On the contrary the Team Lead in that area was also pregnant and was performing those same duties. In addition, [Smith-Brown herself] was approximately four months pregnant at the time." *Id.*

Smith-Brown ultimately filled the TMA Technician position with Sam's employee Byron Sabb (African-American male), who was a hard worker, expressed interest in being promoted, had open availability (except Sundays), and had (unlike Plaintiff) a general knowledge of automobile maintenance. Smith-Brown Decl. ¶ 5.

---

[5] In Plaintiff's deposition, the position at issue seems to also be referred to as a tire cashier or TMA cashier. *See, e.g.*, Pl.'s Dep. 37.

[6] The record contains no indication of what sort of "help" those working as TMA technicians might have had or whether Plaintiff and Smith-Brown (or anyone associated with Sam's) had any discussions concerning Plaintiff's performing the TMA Technician's role with such "help."

When discussing the TMA Technician position at issue, Smith-Brown advised Plaintiff that a part-time TMA Sales Associate (Cashier) position was coming open in March 2012. However, Plaintiff reiterated that she was not interested in a part-time position. Smith-Brown Decl. ¶ 5; *see also* Pl.'s Dep. 28 (Plaintiff's noting that, once she had become a full-time employee she was interested only in full-time positions). As Plaintiff had advised she was not interested in that part-time position (or any part-time position), Smith-Brown did not consider Plaintiff for that position. *Id.* External candidate Nicole Turner (Caucasian female), who had prior experience[7] and a favorable interview, was chosen for that part-time position. *Id.*

Plaintiff submits she was willing to "cross-train" in the TMA to be more qualified when another position became available. Pl.'s Mem. 4, Pl.'s Dep. 37. Plaintiff also testified she would have been willing to work the part-time TMA Sales Associate (Cashier) along with her other Cashier duties to pick up additional hours making her full-time. Pl.'s Dep. 38. As explained by Smith-Brown, being "secondary-coded" (cross-trained) does not permit Sam's employees to combine multiple part-time positions to create a full-time position. Smith-Brown Decl. ¶ 7. Sam's employees are generally expected to work a full shift in one department. *Id.*

   b.   Analysis

Defendant argues Plaintiff cannot establish her prima facie case of pregnancy discrimination as to the TMA Technician position. The undersigned agrees. A plaintiff alleging that she was treated less favorably in promotions because of a protected characteristic must establish a prima facie case by showing that: "(1) she is a member of a protected group, (2) she applied for the position in question, (3) she was qualified for that position, and (4) the defendants rejected her application under circumstances that give rise to an inference of unlawful discrimination." *Anderson*, 406 F.3d at 268.

---

[7] In argument, Plaintiff questions Turner's experience level but provides no facts of her own regarding Turner or her experience. Pl.'s Mem. 12.

It is undisputed that Plaintiff is a member of protected group in that she was pregnant at the time. Although she technically seems to have applied for the TMA Technician position, she concedes she did so in error. Arguably, then, Plaintiff might be said to have satisfied the first two prongs of the prima facie case. However, Plaintiff has not satisfied the remaining prongs.

Plaintiff has made no showing that she was qualified for the TMA Technician position. The only record evidence, including Plaintiff's own deposition testimony, is that she had no car maintenance experience. Pl.'s Dep. 69. Defendant proffered undisputed evidence that the TMA Technician position's duties included "dismounting, mounting, and balancing tires sold by [Sam's]." Smith-Brown Decl. ¶ 5. The only information Plaintiff has even arguably presented on this point is her conjecture in deposition that she was "pretty sure somebody could have helped me, you know, change the tire." Pl.'s Dep. 35. This conjecture, even if considered, does not provide any evidence that Plaintiff was qualified to perform the TMA Technician duties. Plaintiff has not met her burden as to this point.

Plaintiff has not established a prima facia case of pregnancy discrimination as to the TMA Technician position. Defendant's Motion should be granted as to this claim.

In any event, assuming Plaintiff has set forth a prima facie case, she has not set forth evidence to overcome Defendant's stated business reasons for not hiring Plaintiff. Defendant explains that Plaintiff was not chosen for the TMA Technician position because she had not intended to apply for it, she did not have the qualifications, and the person hired for that position was more qualified. Smith-Brown Decl. ¶¶ 4-5. Further, Smith-Brown explained Plaintiff was not considered for the part-time TMA position because Plaintiff did not want a part-time position, *id.* ¶ 6, a point Plaintiff conceded, Pl.'s Dep. 28. In her brief, Plaintiff submits Defendant has failed to meet its burden of establishing legitimate, nondiscriminatory reasons for its decisions because Defendant provided only the Smith-Brown Declaration but did not include

"personnel files or other materials to show" other candidates were more qualified than Plaintiff. Pl.'s Mem. 11-12. As Defendant notes in Reply, Plaintiff overstates the defense burden in the pretext stage. Def.'s Reply 3. *See Heiko*, 434 F.3d at 259 (noting relative employee qualifications are valid, nondiscriminatory bases for any adverse employment decision).

Once an employer has given a legitimate, nondiscriminatory reason for its questioned action, it is not the court's province to determine whether "the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the [alleged adverse employment action against the plaintiff]." *DeJarnette v. Corning Inc.,* 133 F.3d 293, 299 (4th Cir. 1998) (internal quotation marks omitted). Stated another way, Defendant is not required at this juncture to persuade the court that the reasons it proffers are based in fact. It was not Defendant's burden to provide the back-up documentation Plaintiff suggests is lacking. Rather, it is *Plaintiff* who has the burden of presenting competent evidence to overcome these legitimate, non-discriminatory reasons for Defendant's hiring decisions by showing those reasons were merely pretextual and that the "real reason" Plaintiff was not chosen for the TMA Technician position was because she was pregnant at the time. "In a failure to promote case, the plaintiff must establish that she was the better qualified candidate for the position sought." *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996).

Further, to the extent the court considers here Plaintiff's unsubstantiated statement that Smith-Brown advised her that she could not do the work of a Technician while pregnant, the undersigned finds that, considering all available evidence concerning this position, no reasonable jury would consider Plaintiff's application to have been rejected under circumstances giving rise to an inference of unlawful discrimination. *See Merritt*, 601 F.3d at 294-95 ("Notwithstanding the intricacies of [the *McDonnell Douglas*] proof scheme[ ], the core of every Title VII case

remains the same, necessitating resolution of the ultimate question of discrimination *vel non*." (internal quotation marks omitted)).

Both Smith-Brown and the lead in the TMA were also pregnant in February 2012. Decision-maker Smith-Brown[8] was also pregnant. *See Demesme v. Montgomery Cnty. Gov't,* 63 F. Supp. 2d 678, 683 (D. Md. 1999) ("The fact that the decision makers were of the same protected class [as the plaintiff] suggests no discriminatory motivation."), aff'd 208 F.3d 208 (4th Cir. 2000) (*per curium*); *Coggins v. Gov't of D.C.,* No. 97-2263, 1999 WL 94655, at \*4 (4th Cir. 1999) ("The fact that both Krull and Gibbons, first and third in [plaintiff's] chain-of-command, are both Caucasian makes any anti-Caucasian bias unlikely."); *Myers v. Wood*, No. 0:12-CV-00422-JFA, 2013 WL 4823171, at \*8 (D.S.C. Sept. 9, 2013) (finding plaintiff failed to establish prima facie race discrimination claim based in part on fact that decision-maker and plaintiff were of same race).

Plaintiff simply has not satisfied her burden. Plaintiff's claim of pregnancy discrimination in violation of Title VII as related to failure-to-promote claim should be dismissed as a matter of law.[9]

### 2) February 2012 Verbal Coaching

#### a. Background

Plaintiff's other pregnancy-discrimination-related claim concerns a verbal warning (called a "Verbal Coaching" in Sam's parlance) she received in February 2012 when she was approximately seven months pregnant. For context, Defendant has explained its policy that, in order to prevent the loss of merchandise (or "shrink") and to ensure greater accuracy, all cashiers

---

[8] Although Plaintiff generally argues that Turosik was the decision-maker, her argument is focused on actions other than the TMA failure-to-promote claim. *See* Pl.'s Mem. 11. To the extent Plaintiff argues Turosik was the decision-maker as to this claim, such an argument fails as Plaintiff has presented no evidence that Turosik was at all involved in this hiring decision.

[9] To the extent Plaintiff is considered to be claiming pregnancy discrimination as to the part-time TMA cashier position, she has not satisfied her burden, making summary judgment appropriate.

are expected to transfer merchandise from the customer's cart to a different cart when checking out the customer. Declaration of Assistant Manager Jennifer Montville ("Montville Decl." ¶¶ 2-3, ECF No. 38-7; *see also* Pl.'s Dep. 27, 74. Plaintiff acknowledges that the policy is to "transfer," meaning to "lift the items out into another buggy[,]" but indicates [t]hey don't always go by policy, not always consistent with the transfer. One minute they tell you they can spot you and the next minute transfer all items. You never know." Pl.'s Dep. 76-77. Plaintiff explained that "spotting" is when there are few enough items, "as long as [the associate] look[s] through the items or whatever, if [management is] spotting [the associate], they'll tell us to go ahead[.]" Pl.'s Dep. 76.[10] Plaintiff testified that transferring could slow the line down. *Id.* at 77.

Montville testified that all employees were required to transfer merchandise at the Columbia location. If an employee "could not transfer merchandise for medical reasons, they were expected to complete Sam's Club's ADA accommodation form." Montville Decl. ¶ 3. If the accommodation request was approved, the employee would temporarily be moved out of the cashier position and placed in a role that did not require lifting. *Id.* Plaintiff does not claim she completed such an ADA form.

In February 2012, Plaintiff was checking out a customer who was purchasing six 25-pound bags of flour. Plaintiff asked Lead COS[11] Yolanda Mims (Plaintiff's direct supervisor, an African-American female) for permission to be "spotted" or supervised by a COS instead of transferring the items to a different cart. Pl.'s Dep. 41. As relayed by Plaintiff, Mims replied, "'I'm going to lunch. I don't want to tell you yeah. I'm going to let [Lashay Lawyer, COS, African-American female] know so she'll come over here and spot you." Pl.'s Dep. 41. Mims

---

[10] In deposition, Plaintiff references an email Columbia Sam's cashiers had received regarding the potential practice of "spotting" when customers were only purchasing a few of the same items; however, she notes it is dated July 17, 2012, after the February 2012 incident. Pl.'s Dep. 25.

[11] A "COS" is a Check-Out Supervisor. *See* Smith-Brown Decl. ¶ 2.

instructed Lawyer to spot Plaintiff, but Lawyer was busy at the time. *Id.* at 41, 75. According to

Plaintiff, "[Lawyer's] like, I'll be there in a minute, but by that time [the customer] only had six

items, so [Plaintiff] just scanned the six items." *Id.* at 76. Plaintiff noted that Club Manager

Turosik (Caucasian male) walked up about that time, "waited until [Plaintiff] scanned," and

asked Plaintiff whether she was going to move the merchandise. *Id.*; *see also id.* at 41, 44.

Plaintiff testified she became upset at the question because she "felt like as a man and you see

I'm pregnant, you would think he would ask" whether Plaintiff needed any help with the lifting.

*Id.* at 41-42. Plaintiff responded to Turosik that she "wouldn't mind moving [the merchandise]"

if he would help her. *Id., see also id.* at 44-45, 76. Plaintiff testified that Turosik had not heard

the conversation between Mims and Lawyer regarding the request for spotting and that he did

not know Plaintiff "had been told she could scan the items[.]" *Id.* at 44. Plaintiff did not tell

Turosik about the conversation. *Id.* at 48.

On February 4, 2012, Lawyer met with Plaintiff and issued a Verbal Coaching to Plaintiff

for not transferring merchandise. Montville Decl. ¶ 2; ex. 5 to Pl.'s Dep., ECF No. 38-4 at 46.[12]

Montville served as a witness to the coaching, and both Montville and Lawyer "reiterated to

[Plaintiff] that all Cashiers are expected to transfer merchandise from one cart to another when

checking out customers." Montville Decl. ¶ 2. Sam's had several different levels for Coachings:

Verbal Coaching (the first step, which has no effect on compensation or other terms or

conditions of employment), Written Coaching, and Decision-Making Coaching (the final step

before termination). If an Associate receives a Verbal Coaching and does not receive any other

Coachings for 12 months, the Verbal Coaching expires and is no longer active. Pl.'s Dep. 14, 16,

20, 78.

---

[12] Although the print-out concerning the February 4, 2012 "Verbal Coaching" lists it as a "First
Written" Coaching, ECF No. 38-4 at 46, Defendant explains that the terminology subsequently
changed, *see id.*; Def.'s Mem. 6 n.5.

It is undisputed that Lawyer delivered the Verbal Coaching to Plaintiff. Although Plaintiff does not claim Turosik delivered the Coaching or was even present when delivered, she contends Turosik was the decision-maker who ordered the Coaching. Pl.'s Mem. 2 n.1, 11 (noting Plaintiff "specifically testified it was Turosik who demanded that she be issued the Verbal Coaching") (citing Pl.'s Dep. 41-45). In deposition, Plaintiff indicates she "made Jenny [apparently Jenny Montville] aware" of what had happened, and that "Jenny didn't really want to do the coaching, but [Turosik] kept pushing her to do it." Pl.'s Dep. 45. Plaintiff testified that Turosik "would always get other people to do his, you know, write-ups or whatever." *Id.* at 48. In Montville's declaration, she indicated Lawyer "initiated and issued" the Verbal Coaching. Montville Decl. ¶ 2.

Plaintiff submits that Turosik discriminated against her for writing her up on that occasion when she was pregnant while others had not been written up for similar incidents. Pl.'s Mem. 11.

      b.  Analysis

          i.  Exhaustion of Administrative Remedies

Defendant first argues it is entitled to summary judgment on the Verbal-Coaching pregnancy-discrimination claim because Plaintiff did not include that claim on the Charge with the Equal Employment Opportunity Commission ("EEOC"), thereby not exhausting administrative remedies as to that claim. Def.'s Mem. 11.

Before filing suit under Title VII, a plaintiff must exhaust her administrative remedies by bringing a charge with the EEOC. 42 U.S.C. § 2000e–5(f)(1); *see Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) (citing 42 U.S.C. § 2000e–5(f)(1)). The filing of an administrative charge "is not simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005).

Rather, "the charge itself serves a vital function in the process of remedying an unlawful employment practice." *Balas v. Huntington Ingalls Indus.*, *Inc.,* 711 F.3d 401, 407 (4th Cir. 2013). In particular, "[t]he exhaustion requirement ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005); *see Balas*, 711 F.3d at 406-07 (noting exhaustion of EEOC administrative process "notifies the charged party of the asserted violation" and "brings the charged party before the EEOC and permits effectuation of the [Civil Rights] Act's primary goal, the securing of voluntary compliance with the law") (citations and quotation marks omitted). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Evans*, 80 F.3d at 963-64; *see Chacko*, 429 F.3d at 509, 513.

The Charge signed by both Plaintiff and the EEOC on August 8, 2012, complains of being discriminated against on account of her sex/pregnancy and race because she was denied transfer to various positions for which she was qualified. ECF No. 38-8. It does not reference any write-ups or any events related to her moving items from shopping carts. Plaintiff does not dispute that the one-page Charge dated August 8, 2012 does not mention the February 2012 Verbal Coaching incident. Rather, she argues Defendant has "taken some liberties with the facts known to it by arguing [Plaintiff] did not complain about the Verbal Coaching in her charge of discrimination to the EEOC." Pl.'s Mem. 12. Plaintiff attaches additional written information she provided to the EEOC, including an April 2, 2012 Intake Questionnaire. *See* ECF No. 42-2. In her brief, Plaintiff also references a letter dated October 12, 2012 that she also provided to the EEOC. Pl.'s Mem. 12-13. It is unclear which of the additional pages provided in ECF No. 42-2

are the October 2012 letter. These additional documents do include information about the February 2012 Verbal Coaching incident. ECF No. 42-2 at 8.

The undersigned agrees with Defendant that summary judgment is appropriate as to Plaintiff's allegations of discrimination concerning the Verbal Coaching incident. Although the additional EEOC documents presented by Plaintiff, and no doubt available to Defendant through discovery in this litigation, do reference the Verbal Coaching incident, that incident is not referenced at all in the perfected Charge dated August 8, 2012. ECF No. 38-8.

When, as here, a timely perfected Charge has been issued by the EEOC and provided to the employer, the law is clear that "[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Evans,* 80 F.3d at 963-64; *Chacko*, 429 F.3d at 509, 513. Here, Plaintiff offers no legal argument that the court should consider the Verbal Coaching incident to be administratively exhausted based on these standards. Rather, she submits it is to be considered as exhausted because it was included in other documents provided to the EEOC.

The Fourth Circuit Court of Appeals rejects such arguments. In *Balas*, 711 F.3d 401, the plaintiff argued the district court erred by considering only her EEOC charge and not her intake questionnaire and other correspondence sent to the EEOC in deciding the scope of her charge. 711 F.3d at 406-07. The Fourth Circuit disagreed, finding the district court appropriately looked only to the charge filed with the EEOC. *Id.* at 408. The content of plaintiff's intake questionnaire and letters sent to the EEOC, submitted prior to the charge provided to the defendant employer, would not be considered by the court. "Given that Balas's employer was never apprised of the contents of her letters (nor could she expect it to have been), the point at which they were written makes no difference for the goals of putting her employer on notice or encouraging conciliation."

*Id.* The court noted that if charging parties determined that the initial charge did not read as intended, the charging parties' recourse was to file an amended charge with the EEOC. *Id.* To find otherwise would "contraven[e] the purposes of Title VII." *Id.* Balas also argued she should not have been penalized by the EEOC's "negligence" in not sending the questionnaire and letters to her employer. *Id.* The court dismissed that argument, finding no authority "requiring the EEOC to undertake such an action or providing the EEOC with the discretion to do so." *Id.* Further, the court "declined to impose such an obligation upon the EEOC." *Id.*

Similarly, here, there is no evidence that Defendant was on notice of any claims Plaintiff may have mentioned to the EEOC that were not included in the formal charge. That Defendant is now aware of the additional information after doing discovery in this litigation does nothing to change this result. Plaintiff's pregnancy-discrimination claim based on the Verbal Coaching should be dismissed as a matter of law as unexhausted because it was outside the scope of Plaintiff's EEOC charge.

ii. *McDonnell Douglas* Analysis

Even if the incident were considered to have been administratively exhausted, summary judgment remains appropriate as Plaintiff cannot make out a prima facie case of disparate treatment here. To do so, she must show the following: (1) she is a member of a protected class; (2) she was qualified for the job and her performance satisfied her employer's expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside her protected class received more favorable treatment. *See Coleman*, 626 F.3d at 190.

The first element is unchallenged. Plaintiff admitted she was aware of the policy that required merchandise be moved but failed to do so until prompted by Turosik, Pl.'s Dep. 76, arguably indicating she cannot establish she was meeting Defendant's expectations at that time.

Even assuming, *arguendo*, Plaintiff could satisfy the first two elements, she cannot satisfy the remaining ones.

As an initial matter, Plaintiff has provided no competent evidence that Turosik was the decision-maker as to the coaching. Plaintiff's hearsay testimony that Montvale "really didn't want to do the coaching, but [Turosik] kept pushing her to do it[,] Pl.'s Dep. 45, is insufficient. The law does not permit a plaintiff to rely on hearsay to defeat a properly supported summary judgment motion. *See Md. Highways Contractors Ass'n v. State of Md.,* 933 F.2d 1246, 1251 (4th Cir. 1991) ("[H]earsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment."). Contrary to Plaintiff's argument, she has not presented a question of fact as to who the decision-maker was that would render summary judgment inappropriate. Pl.'s Mem. 11 (citing *Harris v. H.H. Gregg, Inc.*, No. 1:11CV813, 2013 WL 1331166 (W.D.N.C. Mar. 29, 2013)).

In *Harris*, the court found a question of fact existed as to this prong of the plaintiff's prima facie case because the person who terminated the plaintiff had not been aware of plaintiff's actions at issue, while other potential decision-makers were aware of those actions. 2013 WL 1331166, at *3. Because Montvale did not witness the February 2012 lifting incident but was present at the coaching, Plaintiff submits a factual dispute exists as to whether Turosik was the decision-maker. Pl.'s Mem. 11. Here, though, Lawyer and Montvale were the ones who met with Plaintiff for the Verbal Coaching. Montvale Decl. ¶ 2. It is undisputed that Lawyer observed the February 2012 incident and was involved in it. In fact, Lawyer had advised Plaintiff she was going to go to Plaintiff's register and assist her when she became available. Pl.'s Dep. 41. Lawyer was aware of the facts and delivered the coaching. No factual question has been presented. Even if one were, it would not necessarily require denial of summary judgment.

In any event, regardless of Turosik's involvement as a decision-maker, the coaching did not impact Plaintiff's employment adversely. "An adverse employment action is a discriminatory act which 'adversely affects the terms, conditions, or benefits of the plaintiff's employment.'" *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375-76 (4th Cir. 2004) (quoting *Von Gunten v. Maryland*, 243 F.3d 858, 865 (4th Cir. 2001) (internal quotation marks omitted). A Verbal Coaching does not constitute an adverse employment action. *See, e.g., Dawson v. United States*, 549 F. Supp. 2d 736, 742 (D.S.C. 2008) (finding poor performance reviews and written reprimands did not constitute adverse employment actions).

Plaintiff submits that the Verbal Coaching was an "adverse action" in that it "was used by Turosik as a basis to adversely affect [Plaintiff's] compensation[.]" Pl.'s Mem. 4. Plaintiff testifies that she had a very good evaluation in 2010 "with role model and exceeds expectations." Pl.'s Dep. 84. In 2011, Plaintiff indicates her then-supervisor, whose name she could not recall, had recommended her for a pay raise of 0.10 (presumably a 0.10 increase to her hourly wage), but Turosik "made" the former supervisor "go back and change" the raise recommendation. *Id.* at 84-85. Plaintiff offers no explanation as to how an event that did not take place until February 2012 could have impacted her evaluation and pay for 2011. The court is unaware how such a causal link could be demonstrated. In addition, as Defendant notes and Plaintiff concedes, Plaintiff did not include any discussion of this in the administrative charge. Def.'s Reply 8, Pl.'s Dep. 86.

Finally, Plaintiff has not provided competent evidence of similarly situated employees outside her class who received more favorable treatment. Plaintiff's deposition testimony that various colleagues were treated differently is far from specific enough to support this element. For example, Plaintiff offered comparisons of an unnamed Caucasian female and one named "Rachel" whom Turosik volunteered to assist in transferring things from one cart to the next.

Pl.'s Dep. 42-43. The only information Plaintiff provides about her would-be comparators is her deposition testimony that neither "Rachel" nor the woman whose name Plaintiff could not recall was pregnant at the time and neither had requested assistance. *Id.* at 44. She provides no details regarding the incidents or the others' personnel records. *See Ward v. City of N. Myrtle Beach*, 457 F. Supp. 2d 625, 643 (D.S.C. 2006) (noting requirement of establishing "other employees" were similarly situated in all relevant respects; that they "dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.") (internal citations omitted). Plaintiff cannot establish a prima facie case as to this pregnancy-discrimination claim, making summary judgment appropriate.[13]

B.    Race-Discrimination Claims

On pages 4-7 of her brief, Plaintiff sets out the following bases for her race discrimination claim:

- The incident discussed above in which Turosik voluntarily assisted "Rachel" (last name unknown; Caucasian female) with transfer of product between carts, Pl.'s Mem. 4-5;

- Turosik's offering to transfer "Rachel" to jobs she had not sought and in which she was not interested, Pl.'s Mem. 3, Pl.'s Dep. 43;

- Turosik's hiring of "Becky" (Caucasian female) as COS, despite her lack of previous experience with Sam's; Pl.'s Mem. 5 (citing Pl.'s Dep. 51);
    - Plaintiff testified Becky told her that the only prior experience she had was as a "regular cashiering job" with Food Lion (Pl.'s Dep. 51);

- Turosik's hiring of "another Caucasian female whose name [Plaintiff] could not remember, but started with a K, who Turosik hired in the Member Champion position and specifically stated he put her in that position because 'he'd need a face like hers when the members walk in the door[;]'" Pl.'s Mem. 5 (quoting Pl.'s Dep. 52);
    - Plaintiff testified this Caucasian female "talked to people in the club," but not Plaintiff directly, bragging that Turosik "was covering her on some of her write-

---

[13] The same lack of proof would also make summary judgment appropriate when considering whether Defendant's stated reason for giving the Verbal Warning was pretextual. The record contains no competent evidence from which a reasonable juror could determine Plaintiff received the Verbal Coaching on account of her pregnancy (or her race).

ups," and that this person was fired on a day Turosik was not at the club for taking excessive breaks, Pl.'s Dep. 53-54; and

- Turosik's permitting employee Tammy Crawford (Caucasian female) to work three different part-time positions in order to work full-time hours until she could be placed in a full-time position, Pl.'s Dep. 56-57.

As an initial matter, Plaintiff's race-discrimination claim based on Turosik's voluntarily helping "Rachel" transfer items while only helping Plaintiff when she specifically asked fails for the same reasons discussed in connection with the pregnancy-discrimination claim based on this claim. Plaintiff has offered no competent evidence indicating she and Rachel were similarly situated.

Plaintiff's remaining race-discrimination claims seem to be general failure-to-promote/non-selection claims and fail for reasons similar to her pregnancy-discrimination claim as to the TMA Technician position. Here, though, Plaintiff does not provide any detailed facts regarding particular open positions for which she applied and did not receive. Rather, she argues more generally that she was discriminated against by Turosik in particular because he placed others in positions for which she allegedly was more qualified.

Defendant's Motion should be granted as to Plaintiff's race-discrimination claims because she cannot establish her prima facie case. Specifically, she has not provided evidence about actual job openings for which she had applied, was qualified, and was rejected "under circumstances that give rise to an inference of unlawful discrimination." *Anderson*, 406 F.3d at 268.

The Fourth Circuit has explained that, when an employer "has a formal system of posting vacancies and allowing employees to apply for such vacancies, an employee who fails to apply for a particular position cannot establish a prima facie case of discriminat[ion]." *Williams v.*

21

*Giant Food Inc.*, 370 F.3d 423, 430 (4th Cir. 2004) (internal citation omitted).[14] Here, Smith-Brown's Declaration and Plaintiff's deposition reference Defendant's policy of opening positions and learning of employees' general interests. Plaintiff has not provided specific information about job openings she was denied on account of her race. Defendant's Motion for Summary Judgment could be granted as to Plaintiff's failure-to-promote race-discrimination claims on this basis alone.

To the extent Plaintiff has raised claims that there were openings that were made known to others but not her, those claims must fail for lack of specificity as well. For example, Plaintiff testified that Turosik "tried to offer Rachel different positions and she wasn't even willing. She didn't even have them in her availability." Pl.'s Dep. 43. However, Plaintiff was unsure what positions those were, *id.*, making her unable to satisfy her prima facie case.

Even if evaluated as a more general disparate treatment claim, Plaintiff cannot establish her prima facie case. Like failure-to-promote claims, disparate treatment claims include an element of showing that similarly situated employees outside of Plaintiff's protected class received more favorable treatment. *See, e.g., Prince-Garrison v. Md. Dept. of Health and Mental Hygiene*, 317 F. App'x 351, 353 (4th Cir. 2009) (*per curium*) (cited by Plaintiff at page 9 of her brief).

Plaintiff has offered no evidence regarding "Becky," her prior work history (other than as a "regular" cashier for Food Lion), or her personnel records when working for Defendant. In addition, Plaintiff admitted she did not know what sort of conversation Turosik had with Becky concerning her hiring or exactly when Becky worked for Defendant. Pl.'s Dep. 51. Regarding the

---

[14] The *Williams* court noted "the application requirement may be relaxed and the employee treated as if she had actually applied for a specific position" if an employer "fails to make its employees aware of vacancies[.]" 370 F.3d at 431.

membership champion position held by a former employee whose name began with a "K," Plaintiff admitted she was not qualified for that position and "didn't really want it." *Id.* at 53-54.

Regarding Tammy Crawford's being permitted to combine three part-time jobs to work full-time hours until one became available, Plaintiff has proffered no evidence other than her own deposition testimony regarding Crawford. Pl.'s Dep. 56-67. As explained by Smith-Brown, Crawford was moved to a part-time accounting position that became available in May 2012, while Plaintiff was on leave and not considered for open positions (or "requisitions"). Smith-Brown Decl. ¶¶ 8-9. Crawford accepted that part-time position and had requested to move from full-time to part-time status. *Id.* ¶ 9. The only evidence that "others" were permitted to cobble together full-time hours from several part-time positions is Plaintiff's own unsubstantiated testimony.

Contrary to Plaintiff's argument, *see* Pl.'s Mem. 11-12, the burden of providing details regarding the comparators she has identified is on *her*, not Defendant. *See, e.g., Coleman*, 626 F.3d at 190 (noting burden of establishing prima facie case of race discrimination is on plaintiff).

Plaintiff also generally argues discrimination because "although she was asked by the Defendant to train all of the new cashiers, she was never promoted to the COS supervisor position." Pl.'s Mem. 6. Again, Plaintiff does not identify a specific open COS position for which she had applied and was not hired. Further, although "Becky" was a COS, as discussed above Plaintiff has not met her burden of showing the two were similarly situated. In addition, Defendant has provided uncontroverted evidence that its Workplace Standards Policy did not permit employees to supervise "family members," which included sisters. Smith-Brown Decl. ¶ 3; Workplace Standards Policy, ECF No. 38-6. Plaintiff's sister was also a cashier at the Columbia Sam's for at least a portion of the time at issue. *See* Smith-Brown Decl. ¶ 3, Pl.'s Dep. 57. Plaintiff could not have held a COS position while her sister was employed. In deposition,

Plaintiff noted she was "still overlooked" for that position "even after [her] sister left." *Id.* Other than this general statement, the record contains no information about when her sister left Defendant's employ or that Plaintiff was actually overlooked for a COS position after that time. Plaintiff's general notion that Defendant "wasn't going along the policies and procedures they had," Pl.'s Dep. 57, is unavailing and unsupported. As an example, Plaintiff noted two cousins had been "working up front." *Id.* However, the Workplace Standards Policy provided by Defendant does not define "cousins" as relatives who could not supervise one another. ECF No. 38-6.

Finally, the court notes that Plaintiff's brief includes much general argument regarding Turosik and his allegedly discriminatory treatment of Plaintiff and others. However, Plaintiff has not pleaded or established any viable cause of action against Defendant based on Turosik's actions or inactions. Summary judgment as to all claims is appropriate.

III.    Conclusion and Recommendation

For the reasons set forth herein, it is recommended that Defendant's Motion for Summary Judgment be granted and this matter be ended.

IT IS SO RECOMMENDED.

May 19, 2015                                        Kaymani D. West
Florence, South Carolina                   United States Magistrate Judge

**The parties are directed to note the important information in the attached**
**"Notice of Right to File Objections to Report and Recommendation."**